Jonathan G. Fetterly (CA State Bar No. 228612)
**BRYAN CAVE LLP**
560 Mission Street, 2500
San Francisco, California 94105
Telephone: (415) 675-3400
Facsimile: (415) 675-3434
E-Mail: jon.fetterly@bryancave.com
Attorney for Defendant Asia-Global Renewable Energy Corp.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eferton DMCC, <br><br> Plaintiff, <br><br> vs. <br><br> Asia-Global Renewable Energy Corp., and Terry Hou, Defendants. <br><br> Defendants. | Case No. 2:15-CV-9295 <br><br> **DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO PLAINTIFF EFERTON DMCC'S FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) FRAUD;** <br> **(2) CIVIL CONSPIRACY;** <br> **(3) NEGLIGENT MISREPRESENTATION;** <br> **(4) BREACH OF EXPRESS WARRANTY; AND** <br> **(5) BREACH OF CAL. BUS. PROF. CODE § 17200 ET SEQ.** <br><br> Hon. Manuel L. Real |

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

6656342.3

Defendant Asia-Global Renewable Energy Corp. ("Defendant"), by and through its undersigned attorneys of record, for its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint ("Complaint") for damages, states as follows:

## JURISDICTION

1.      *This is a civil action for fraud, civil conspiracy, negligent misrepresentation, breach of express warranty, and violation of Cal. Bus. & Prof. Code § 17200 et seq. The Court has jurisdiction over this action under 28 U.S.C. § 1332 because opposing parties are citizens of different states or foreign states and the amount in controversy exceeds $75,000.*

**ANSWER:** Defendant states that ¶ 1 of the Complaint states a legal conclusion, for which no answer is required.

## VENUE

2.      *Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).*

**ANSWER:** Defendant states that ¶ 2 of the Complaint states a legal conclusion, for which no answer is required.

## PARTIES

3.      ***Eferton DMCC*** *("Eferton") is a company registered and licensed as a freezone company under the rules and regulations of the Dubai Multi Commodities Centre, with its principal place of business at Unit 4203, Jumeirah Business Centre 1, Jumeirah Lakes **Tower, P.O. Box** 488085 Dubai, United Arab Emirates.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 3 of the Complaint, and therefore denies the same.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

4.      *Eferton specialized in trading non-ferrous metal products and raw materials. By way of example, Eferton sometimes contracted to buy commodities from a party at a pre-agreed rate. Eferton then on-sold those commodities to a third party, often when the commodities were in transit. Sometimes the party from whom Eferton acquired the commodities was related to the company to whom Eferton sold the commodities. In those circumstances, Eferton would take on the risk as to the commodities while in transit and would charge an uplift to the party to whom it sold the commodities. Eferton would place other transactions in order to hedge its risk in respect of the commodities which it had acquired. It was not unusual for Eferton to enter into several contracts with the same set of sellers and buyers and, in those circumstances, Eferton would protect its interests by requiring **the party** to whom it was on-selling the products to post cash collateral or margin with Eferton as security for the trades.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 4 of the Complaint, and therefore denies the same.

5.      *On information and belief, Asia-Global Renewable Energy Corp. ("Asia-Global") is a California corporation with its principal place of business at 9822 Klingerman St., South El Monte, California 91733.*

**ANSWER:** Defendant admits the allegations in ¶ 5 of the Complaint.

6.      *On information and belief, DJL Mining, LLC ("DJL LLC") is a California limited liability company with its principal place of business at 3 Pointe Dr. St 315, Brea, California 92821 and/or at 9822 Klingerman St., South El Monte, California 91733.*

**ANSWER:** Defendant admits the allegations in ¶ 6 of the Complaint.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1        *7.     On information and belief, DJL Mining, Corp. ("DJL Corp.," and,*

2    *collectively with DJL LLC, "DJL") is a California corporation with its principal*

3    *place of business at 9822 Klingerman St., South El Monte, California, 91733.*

4        **ANSWER:** Defendant admits the allegations in ¶ 7 of the Complaint.

5

6        *8.     On information and belief, Terry Hou, also known as Terry Huo, Terry*

7    *Zou, Hou Zou Lin, Hou Zuolin, Zuo Yang Ping, and Yang Ping Zuo, is an*

8    *individual residing in the People's Republic of China. On information and belief,*

9    *Mr. Hou is the effective controller of a number of companies, including two known*

10   *as World Gold International Limited ("World Gold") and Shing Fu (HK) Metal Co.,*

11   *Ltd. ("Shing Fu"). Mr. Hou runs a complex business dealing in, among other*

12   *things, copper commodities. This business is conducted through a variety of entities*

13   *which he controls, including, on information and belief, World Gold and Shing Fu.*

14   *On information and belief, at all relevant times, World Gold and Shing Fu acted at*

15   *Mr. Hou's direction, on his behalf, and for his benefit, including with respect to the*

16   *transactions at issue.*

17       **ANSWER:** Defendant lacks knowledge or information sufficient to form a

18       belief as to the truth of the allegations in ¶ 8 of the Complaint, and therefore

19       denies the same.

20

21              **OVERVIEW OF THE TRANSACTIONS AT ISSUE**

22       *9.     Between October 8, 2015, and November 12, 2015, Eferton entered*

23   *into six contracts with World Gold and six contracts with Shing Fu. These contracts*

24   *are attached hereto as **Exhibit A.***

25       **ANSWER:** Defendant lacks knowledge or information sufficient to form a

26       belief as to the truth of the allegations in ¶ 9 of the Complaint, and therefore

27       denies the same.

28

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1      *10.    The World Gold and Shing Fu contracts collectively relate to the*

2 *shipment of cargo — represented to be copper ingots with a 97% minimum copper*

3 *content — from the United States to China (the "Shipments"). Under the*

4 *arrangement contemplated by the contracts, Eferton would purchase the copper*

5 *ingots from World Gold at or around the time that the ingots departed the United*

6 *States, and would then sell the ingots to Shing Fu, which would render payment to*

7 *Eferton two days prior to the estimated time of arrival in China.*

8      **ANSWER:** Defendant lacks knowledge or information sufficient to form a

9      belief as to the truth of the allegations in ¶ 10 of the Complaint, and

10      therefore denies the same.

11

12      *11.    The type of contracts described are well-known to traders of metals and*

13 *other commodities. They are, or should be, part of a low risk financing transaction,*

14 *whereby the vendor (World Gold) sells the assets — the copper ingots —to Eferton*

15 *(with full title transfer) at the start of the transaction, and the purchaser (Shing Fu)*

16 *commits to repurchase the assets at the end of the transaction. Although the copper*

17 *ingots are sold and purchased, the overall economic effect of the transactions is*

18 *similar to a short term secured loan as Eferton only holds the copper for the period of*

19 *the voyage and World Gold/Shing Fu only holds the price paid for the copper for the*

20 *same period. The difference between the purchase and the sale price is the reward to*

21 *Eferton for providing the cash to World Gold for the duration of the voyage. Eferton*

22 *should be fully secured because if Shing Fu defaults on its obligation to repurchase*

23 *the copper, Eferton will be the owner of copper ingots that can be resold easily on the*

24 *world's metal markets. Eferton would be protected against any decline in the value of*

25 *the copper during the voyage by the payment of margin or collateral by Shing Fu.*

26 *This is how the World Gold and Shing Fu contracts should have operated. It is*

27 *central to the operation of such contracts that copper of the agreed quality is, in fact,*

28 *sold, held, and repurchased.*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 11 of the Complaint, and therefore denies the same.

12.     *It was an express term of both the World Gold and Shing Fu contracts that the goods were to be copper ingots with a minimum of 97% copper content, and that the origin of the ingots was to be the United States of America or Mexico.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 12 of the Complaint, and therefore denies the same.

## THE SUPPLIER(S)

13.     *Eferton was told by Mr. Hou that World Gold would purchase the copper in question from Asia-Global and/or DJL prior to selling the copper to Eferton. Eferton believed that World Gold had a history of purchasing such materials from Asia-Global and/or DJL, and that World Gold, Asia-Global and/or DJL worked together to execute similar transactions with other companies like Eferton. Several Eferton employees had previously worked at a different company, BTG Pactual, which entered into similar transactions with World Gold, and, during these prior dealings, employees formerly at BTG Pactual were told by World Gold that World Gold worked with Asia-Global and/or DJL to purchase the materials. As a result, Eferton had no reason to doubt that Asia-Global and/or DJL supplied the materials for the Shipments.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 13 of the Complaint, and therefore denies the same.

## THE MISREPRESENTATIONS

*14.      Prior to Efterton's entering into the initial contract, Mr. Hou, World Gold, and Shing Fu represented to Efterton's agent that: (1) World Gold held, or would presently obtain, good title to copper ingots with a minimum copper content of 97%; (2) World Gold intended to and was able to sell and deliver such copper ingots to Efterton; and (3) Shing Fu intended to and was able to purchase the same copper ingots from Efterton for the price stipulated in the contracts.*

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 14 of the Complaint, and therefore denies the same.

*15.      Mr. Hou, World Gold, and Shing Fu made similar representations to Efterton's agent prior to each subsequent transaction.*

**ANSWER:**  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 15 of the Complaint, and therefore denies the same.

*16.      Mr. Hou, World Gold, and Shing Fu provided Efterton's agent with the following documents on October 8, 2015, describing two cargoes to be sold to Efterton: (1) two certificates of quality issued by Asia-Global and DJL Corp., headed "Asia Global Renewable Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, describing the goods shipped as copper ingots, and certifying that the ingots contained 97% copper content, attached hereto as **Exhibit B;** (2) two bills of lading issued by a freight forwarder (CTS International Logistics Corporation Limited ("CTS"), a Chinese corporation operating and incorporated in the U.S.), also bearing Asia-Global's seal, listing the shippers (understood to be the suppliers per industry practice) as Asia-Global and DJL Corp., describing the cargo as copper ingots, and representing that World Gold had title to the cargoes*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1  *of copper ingots it intended to sell to Eferton, attached hereto as* **Exhibit C;** *and (3)*
2  *two packing lists issued by DJL Corp. and Asia-Global, headed "Asia Global*
3  *Renewable Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, and*
4  *describing the goods shipped as copper ingots, attached hereto as* **Exhibit D.** *In*
5  *reliance on these documents, Eferton signed the first set of contracts with World*
6  *Gold and Shing Fu later that same day of October 8, 2015, and the contracts were*
7  *fully executed on October 9, 2015.*

8       **ANSWER:** Defendant denies that it made or authorized the documents
9       referenced in ¶ 16.  Defendant lacks knowledge or information sufficient to
10       form a belief as to the truth of the remaining allegations in ¶ 16 of the
11       Complaint, and therefore denies the same.

12

13       *17.    Mr. Hou, World Gold, and Shing Fu provided similar documents to*
14  *Eferton's agent via email on October 8 and October 10, 2015, including: (1) six*
15  *certificates of quality issued by Asia-Global and DJL Corp., headed "Asia-Global*
16  *Renewable Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal,*
17  *describing the goods shipped as copper ingots, and certifying that the ingots*
18  *contained either 97.0% or 97.1% copper content, attached hereto as* **Exhibit E;** *(2)*
19  *six bills of lading issued by CTS, also bearing Asia-Global's seal, listing the*
20  *shippers as Asia-Global and DJL Corp., describing the cargo as copper ingots, and*
21  *representing that World Gold had title to the cargoes of copper ingots it intended to*
22  *sell to Eferton, attached hereto as* **Exhibit F;** *(3) six packing lists issued by DJL*
23  *Corp. and Asia-Global, headed "Asia Global Renewable Energy Corp" and "DJL*
24  *Mining Corp," bearing Asia-Global's seal, and describing the goods shipped as*
25  *copper ingots, attached hereto as* **Exhibit G;** *and (4) six certificates of origin issued*
26  *by World Gold, describing the goods as copper ingots originating in the United*
27  *States. In reliance on these documents, Eferton fully executed the second set of*
28  *contracts with World Gold and Shing Fu on October 14, 2015.*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

**ANSWER:** Defendant denies that it made or authorized the documents referenced in ¶ 17. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in ¶ 17 of the Complaint, and therefore denies the same.

*18.    Mr. Hou, World Gold, and Shing Fu provided similar documents to Eferton's agent via email on October 19, 2015, including: (1) three certificates of quality issued by Asia-Global and DJL Corp., headed "Asia Global Renewable Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, describing the goods shipped as copper ingots, and certifying that the ingots contained either 97.0% or 97.1% copper content, attached hereto as **Exhibit H;** (2) three bills of lading issued by CTS, also bearing Asia-Global's seal, listing the shippers as Asia-Global and DJL Corp., describing the cargo as copper ingots, and representing that World Gold had title to the cargoes of copper ingots it intended to sell to Eferton, attached hereto as **Exhibit I;** (3) three packing lists issued by DJL Corp. and Asia-Global, headed "Asia Global Renewable Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, and describing the goods shipped as copper ingots, attached hereto as **Exhibit J;** and (4) three certificates of origin issued by World Gold, describing the goods as copper ingots originating in the United States. In reliance on these documents, Eferton fully executed the third set of contracts with World Gold and Shing Fu on October 20, 2015.*

**ANSWER:** Defendant denies that it made or authorized the documents referenced in ¶ 18. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in ¶ 18 of the Complaint, and therefore denies the same.

*19.    Mr. Hou, World Gold, and Shing Fu provided similar documents to Eferton's agent via email on October 23, 2015, including: (1) four certificates of*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1  *quality issued by Asia-Global and DJL Corp., headed "Asia Global Renewable*

2  *Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, describing the*

3  *goods shipped as copper ingots, and certifying that the ingots contained either 97.0%*

4  *or 97.1% copper content, attached hereto as **Exhibit K;** (2) four bills of lading issued*

5  *by CTS, also bearing Asia-Global's seal, listing the shippers as Asia-Global and DJL*

6  *Corp., describing the cargo as copper ingots, and representing that World Gold had*

7  *title to the cargoes of copper ingots it intended to sell to Eferton, attached hereto as*

8  ***Exhibit L;** (3) four packing lists issued by DJL Corp. and Asia-Global, headed "Asia*

9  *Global Renewable Energy Corp." and "DJL Mining Corp," bearing Asia-Global's*

10  *seal, and describing the goods shipped as copper ingots, attached hereto as Exhibit*

11  ***M;** and (4) four certificates of origin issued by World Gold, describing the goods as*

12  *copper ingots originating in the United States. In reliance on these documents,*

13  *Eferton fully executed the fourth set of contracts with World Gold and Shing Fu on*

14  *October 28, 2015.*

15  **ANSWER:** Defendant denies that it made or authorized the documents

16  referenced in ¶ 19.  Defendant lacks knowledge or information sufficient to

17  form a belief as to the truth of the remaining allegations in ¶ 19 of the

18  Complaint, and therefore denies the same.

19

20  *20.  Mr. Hou, World Gold, and Shing Fu provided similar documents to*

21  *Eferton's agent via email on November 2, 2015, including: (1) four certificates of*

22  *quality issued by Asia-Global and DJL Corp., headed "Asia Global Renewable*

23  *Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, describing the*

24  *goods shipped as copper ingots, and certifying that the ingots contained either*

25  *97.0% or 97.1% copper content, attached hereto as Exhibit N; (2) four bills of*

26  *lading issued by CTS, also bearing Asia-Global's seal, listing the shippers as Asia-*

27  *Global and DJL Corp., describing the cargo as copper ingots, and representing*

28  *that World Gold had title to the cargoes of copper ingots it intended to sell to*

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

1    *Eferton, attached hereto as Exhibit 0; (3) four packing lists issued by DJL Corp.*
2    *and Asia-Global, headed "Asia Global Renewable Energy Corp." and "DJL Mining*
3    *Corp," bearing Asia-Global's seal, and describing the goods shipped as copper*
4    *ingots, attached hereto as Exhibit P; and (4) four certificates of origin issued by*
5    *World Gold, describing the goods as copper ingots originating in the United States.*
6    *In reliance on these documents, Eferton fully executed the fifth set of contracts with*
7    *World Gold and Shing Fu on November 6, 2015.*

8    **ANSWER:**  Defendant denies that it made or authorized the documents
9    referenced in ¶ 20.  Defendant lacks knowledge or information sufficient to
10   form a belief as to the truth of the remaining allegations in ¶ 20 of the
11   Complaint, and therefore denies the same.

12

13   *21.     Mr. Hou, World Gold, and Shing Fu provided similar documents to*
14   *Eferton's agent via email on November 10, 2015, including: (1) four certificates of*
15   *quality issued by Asia-Global and DJL Corp., headed "Asia Global Renewable*
16   *Energy Corp" and "DJL Mining Corp," bearing Asia-Global's seal, describing the*
17   *goods shipped as copper ingots, and certifying that the ingots contained either*
18   *97.0% or 97.1% copper content, attached hereto as **Exhibit Q;** (2) four bills of*
19   *lading issued by CTS, also bearing Asia-Global's seal, listing the shippers as Asia-*
20   *Global and DJL Corp., describing the cargo as copper ingots, and representing*
21   *that World Gold had title to the cargoes of copper ingots it intended to sell to*
22   *Eferton, attached hereto as **Exhibit R;** (3) four packing lists issued by DJL Corp.*
23   *and Asia-Global, headed "Asia Global Renewable Energy Corp." and "DJL Mining*
24   *Corp," bearing Asia-Global's seal, and describing the goods shipped as copper*
25   *ingots, attached hereto as **Exhibit S;** and (4) four certificates of origin issued by*
26   *World Gold, describing the goods as copper ingots originating in the United States.*
27   *In reliance on these documents, Eferton fully executed the sixth set of contracts with*
28   *World Gold and Shing Fu on November 12, 2015.*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

**ANSWER:** Defendant denies that it made or authorized the documents referenced in ¶ 21.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in ¶ 21 of the Complaint, and therefore denies the same.

22.     *Based upon Mr. Hou's representations, as set forth in Paragraphs 14-15, as well as the contracts themselves, Eferton had no reason to doubt that the documents detailed in Paragraphs 16-21 were valid. Additionally, based on Eferton agents' previous course of dealing with World Gold, as described in Paragraph 13, the documents appeared consistent and legitimate.*

**ANSWER:** Defendant denies the allegations in ¶ 22 of the Complaint.

23.     *Eferton also had no reason to doubt that the goods it believed it was purchasing were copper ingots that contained at least 97% copper and originated from Asia-Global and/or DJL. It is standard industry practice that certificates of quality and packing lists be issued by the company that is supplying the goods, and every single certificate and packing list required for these transactions bore Asia-Global's and DJL's names as well as Asia-Global's seal. Pursuant to standard industry practice it is also understood that when a supplier's seal is on such a document, the supplier itself placed the seal on the document. Eferton would have no reason to even entertain the idea that Asia-Global's seal was placed on these documents (or on the bills of lading) without Asia-Global's knowledge. Likewise, it is standard industry practice that when a bill of lading is issued naming a specific company as shipper, that company would be the supplier, would authorize its naming in the bill, would provide or verify information about the cargo, and would be given a copy of the bill. All of the certificates of quality, packing lists, and bills of lading detailed in Paragraphs 16-21, on their face, indicated that Asia-Global and DJL were well aware of the transactions, had supplied the goods, had certified their*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

quality, had put Asia-Global's stamp on the certificates and packing lists, and were given or retained copies of the documents.

**ANSWER:** Defendant denies the allegations in ¶ 23 of the Complaint.

24.    Furthermore, on information and belief, in prior transactions between BTG Pactual and World Gold, issues never arose with regard to the quality of copper ingots shipped pursuant to those transactions. As a result, Eferton had no reason to believe that anything would be amiss with additional transactions whereby World Gold sold copper supplied by Asia-Global and DJL.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in ¶ 24 of the Complaint, and therefore denies the same.  Defendant denies the allegations in the second sentence in ¶ 24 of the Complaint.

25.    Eferton entered into each of the contracts described in Paragraphs 16-21 in reliance on the representations made by Mr. Hou, World Gold, and Shing Fu to Eferton's agent at the outset of each transaction and by World Gold's and Shing Fu's signing of the contracts, as well as the representations made by Mr. Hou, World Gold, and Shing Fu and by Asia-Global and DJL through the provision, issuance, or stamping of the bills of lading, certificates of quality, packing lists, certificates of origin, and invoices, all of which contained descriptions of the goods matching the terms of the contracts.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 25 of the Complaint, and therefore denies the same.

26.    The World Gold contracts required Eferton to pay the purchase price for the ingots three working days following its receipt from World Gold of

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

*documentation including a commercial invoice, a bill of lading, an insurance certificate confirming 110% coverage of the product, certificates of quality, and certificates of origin. In reliance on the documents detailed in Paragraphs 16-21 and the representations detailed in Paragraphs 14-21, Eferton paid a total sum of $44,501,844.87 to purchase the copper ingots as contemplated by the World Gold contracts.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 26 of the Complaint, and therefore denies the same.

*27.     The Shing Fu contracts required Shing Fu to make a deposit of 10% of a shipment's value no later than one working day before the shipment date stated on the applicable invoice. Shing Fu made deposits of $4,477,612 pursuant to this contractual requirement.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 27 of the Complaint, and therefore denies the same.

*28.     The Shing Fu contracts also allowed Eferton to require that Shing Fu provide cash collateral upon demand from Eferton under certain circumstances. Shing Fu provided $3,093,380 in response to such demands made before and on November 16, 2015.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 28 of the Complaint, and therefore denies the same.

*29.     On November 14 and 15, 2015, Eferton's agents and employees met with Mr. Hou. During these meetings, Mr. Hou represented to Eferton's employees*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

*and agents that he has a business partner, operating through Asia-Global, who has*

*a license to recover copper ingots from slag at the site of an old smelter in St.*

*Louis. Mr. Hou stated that while the slag has a copper content of only 5-8%, Asia-*

*Global is able to produce significant amounts of copper ingots with 97% copper*

*content from this material. Mr. Hou stated that these ingots are shipped to entities*

*controlled by him, which in turn import the ingots into China, where they are sold*

*to other smelters or otherwise used. To further reassure Eferton of his enterprise's*

*success, Mr. Hou specifically added that he had recently purchased another smelter*

*in Illinois named Big River Zinc. Eferton's reliance on the prior representations*

*that the goods being shipped were in accordance with the contracts was*

*strengthened by these additional representations. As a result of these additional*

*representations, Eferton continued to believe that the goods it purchased were*

*copper ingots with 97% copper content, and originated with Asia-Global.*

   **ANSWER:**  Defendant lacks knowledge or information sufficient to form a
   belief as to the truth of the allegations in ¶ 29 of the Complaint, and
   therefore denies the same.


   *30.    After November 16, 2015, Eferton made appropriate demands for at*

*least $2,816,188 in cash collateral from Shing Fu. However, Shing Fu has not*

*provided any of this money, in violation of its contractual obligations.*

   **ANSWER:**  Defendant lacks knowledge or information sufficient to form a
   belief as to the truth of the allegations in ¶ 30 of the Complaint, and
   therefore denies the same.


   *31.    The Shing Fu contracts specified that Shing Fu would purchase the*

*copper at a price related to the current price of copper on the London Metal*

*Exchange. Under the terms of the contracts, the total sum that Eferton expected to*

*be paid under the Shing Fu contracts was approximately $44,755,753.89.*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1  **ANSWER:** Defendant lacks knowledge or information sufficient to form a

2  belief as to the truth of the allegations in ¶ 31 of the Complaint, and

3  therefore denies the same.

4

5  *32.     The Shing Fu contracts required Shing Fu to pay the final value of the*

6  *copper ingots less the amount already paid by Shing Fu pursuant to a final invoice*

7  *("Final Margin Invoice") upon receipt from Eferton of documents including a*

8  *commercial invoice, a bill of lading, certificates of quality, and certificates of*

9  *origin. These payments were to be made no later than two working days before the*

10 *estimated time of arrival of the vessels carrying the copper ingots to port in China.*

11 **ANSWER:** Defendant lacks knowledge or information sufficient to form a

12 belief as to the truth of the allegations in ¶ 32 of the Complaint, and

13 therefore denies the same.

14

15 *33.     However, Shing Fu failed to make any of the payments for Final*

16 *Margin Invoices that came due on or after November 17, 2015. Up until November*

17 *23, 2015, Shing Fu provided Eferton with various excuses as to why the payment*

18 *had not yet been processed.*

19 **ANSWER:** Defendant lacks knowledge or information sufficient to form a

20 belief as to the truth of the allegations in ¶ 33 of the Complaint, and

21 therefore denies the same.

22

23 ## DISCOVERY OF THE FRAUD

24 *34.     Due to Shing Fu's violation of the contracts, Eferton's agents met with*

25 *Mr. Hou on November 24, 2015.*

26 **ANSWER:** Defendant lacks knowledge or information sufficient to form a

27 belief as to the truth of the allegations in ¶ 34 of the Complaint, and

28 therefore denies the same.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

1

2      35.    *At this meeting, Mr. Hou admitted that the contracts were part of an*

3  *elaborate fraud.*

4      **ANSWER:**  Defendant lacks knowledge or information sufficient to form a

5      belief as to the truth of the allegations in ¶ 35 of the Complaint, and

6      therefore denies the same.

7

8      36.    *Mr. Hou admitted that the shipments did not contain copper ingots of*

9  *at least 97% purity. Rather, Mr. Hou stated that the shipments were not comprised*

10  *of copper ingots at all, but instead of materials containing no more than 10%*

11  *copper, with many containing less.*

12      **ANSWER:**  Defendant lacks knowledge or information sufficient to form a

13      belief as to the truth of the allegations in ¶ 36 of the Complaint, and

14      therefore denies the same.

15

16      37.    *In that same conversation, Mr. Hou stated that these materials would*

17  *not have been allowed to be imported into China due to their high levels of*

18  *impurity, that he had been stopping the cargo in Hong Kong and shipping it to*

19  *Vietnam for sale, and that the proceeds were then used to fund his operations in*

20  *Jiangxi and the United States.*

21      **ANSWER:**  Defendant lacks knowledge or information sufficient to form a

22      belief as to the truth of the allegations in ¶ 37 of the Complaint, and

23      therefore denies the same.

24

25      38.    *Additionally, Mr. Hou made comments in that same conversation*

26  *about how individuals in China do business with foreigners using multiple names,*

27  *implying an intent to evade liability.*

28

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 38 of the Complaint, and therefore denies the same.

*39.     In a further meeting between Mr. Hou and Eferton's agents on December 2, 2015, Mr. Hou admitted that the certificates of quality issued by Asia-Global falsely certified the content of the cargoes and were used to deceive the authorities in the United States and Hong Kong as well as the shipping lines carrying the cargoes. Mr. Hou explained that by declaring the materials as copper ingots rather than waste, Asia-Global was able to pay drastically reduced shipping and transport charges.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 39 of the Complaint, and therefore denies the same.

*40.     Mr. Hou's admission that Asia-Global's certificates of quality were false demonstrates Asia-Global's close connection and collusion with Mr. Hou and his operations. As noted above, Mr. Hou's companies have a history of working with Asia-Global and DJL. Additionally, Asia-Global's and DJL's involvement with the bills of lading in these transactions further illustrates the connections between Mr. Hou and Asia-Global and DJL. Asia-Global and DJL were listed as the designated shippers on the House Bills of Lading ("HBLs") issued by CTS, attached hereto as Exhibit T, and were designated as "Care of" in the Master Bills of Lading ("MBLs") issued by various shipping lines, a number of which also contained Asia-Global's and DJL's El Monte address under "Shipper," attached hereto as Exhibit U. As stated above, it is standard industry practice for the freight forwarder and the shipping line to issue a copy of the HBLs and MBLs to the designated shipper (which is understood to be the supplier) and the party designated as "Care of," and*

*the bills would not be issued without confirmation and information from the shipper/supplier. Thus, for each transaction, Asia-Global and DJL would have provided false information for the bills of lading and received copies of the bills twice. On information and belief, Mr. Hou instructed Asia-Global and DJL and/or Asia-Global and DJL colluded with Mr. Hou to issue false certificates and packing lists and provide false information for the bills of lading.*

**ANSWER:** Defendant denies the allegations in ¶ 40 of the Complaint.

*41.     Upon discovering that it had been defrauded, Eferton immediately took steps to intercept and inspect the Shipments, all of which had departed the United States, but none of which had yet reached their port of final discharge in China.*

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 41 of the Complaint, and therefore denies the same.

*42.     In December 2015, Eferton arranged for Inspectorate Shanghai ("Inspectorate") to visually inspect the Shipments to determine their contents. Based on these visual inspections, Inspectorate issued three certificates of inspection, which stated that the materials contained in the Shipments were most likely soil, slag stone, and tailings. Eferton also arranged for both Inspectorate and ALS Technichem (HK) Pty Ltd ("ALS") to test chemical samples from several of the Shipments shipped between October 14 and November 4, 2015. Inspectorate and ALS issued certificates of analysis that confirmed the Shipments did not contain 97% copper but, instead, only contained between 2.66% and 5.66% copper. These certificates and chemical analyses are attached hereto as Exhibit V.*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1

2

3

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 42 of the Complaint, and therefore denies the same.

4

5

6

7

8

9

10

*43.     On information and belief, the goods contained in the Shipments originated from a former Chemetco smelter site in Hartford, Illinois (the "Chemetco Site"). Eferton has learned that this site is now a Superfund site sealed by the Environmental Protection Agency due to violations of the Clean Water Act, which resulted in a public health hazard. Because the goods likely originated from this site, they may be severely contaminated.*

11

12

13

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 43 of the Complaint, and therefore denies the same.

14

15

16

17

*44.     Many of the shipping lines requested undertakings from Eferton for costs incurred because the Shipments could not be offloaded or asserted liens over the cargoes.*

18

19

20

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in ¶ 44 of the Complaint, and therefore denies the same.

21

22

## ASIA-GLOBAL, DJL, AND THE CHEMETCO SITE

23

24

25

26

27

28

*45.     DJL LLC and DJL Corp. appear to effectively operate as a single entity. DJL LLC first filed with the California Secretary of State in 2012, listing its address as 9822 Klingerman St., South El Monte, California, 91733. It later filed again in 2014, changing the address to 3 Pointe Dr. Ste 315, Brea, CA 92821. DJL Corp. first filed with the California Secretary of State in 2013, listing its business address as 9822 Klingerman St., South El Monte, California, 91733. Jie or Jeffrey*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

*Yang is variously listed as the agent, president, or contact in these filings. The DJL LLC and DJL Corp. filings are attached hereto as Exhibit W. Additionally, DJL appears to have two websites: djlmining.com and djlmining.org. Both websites refer to DJL LLC and DJL Corp. as the collective entity "DJL Mining."*

**ANSWER:** Defendant denies the first sentence of ¶ 45 of the Complaint. Defendant denies that DJL LLC first filed in California in 2012. Defendant admits that DJL LLC filed in California in 2014 and that DJL Corp. filed in California in 2013. Defendant admits that Mr. Yang is the owner of both DJL entities and serves in an officer role for both. Defendant denies that the documents attached as Exhibit W to the Complaint are the "filings" of either DJL entity. Defendant denies that both of the websites are currently maintained and further states that the website(s) speak for themselves. Except as expressly admitted, Defendant denies the allegations in ¶45 of the Complaint.

*46.     Asia-Global also appears to effectively operate as the same entity as DJL. On the two DJL websites and on Asia-Global's website, the company descriptions are virtually identical. The relevant webpages are attached hereto as Exhibit X. Furthermore, in its filing with the California Secretary of State and on its website, Asia-Global designates DJL's El Monte address as its business address. Mr. Yang is also listed as Asia-Global's president. The filing is attached hereto as Exhibit Y. On information and belief, therefore, DJL Corp., DJL LLC, and Asia-Global effectively operate as one entity.*

**ANSWER:** Defendant denies the allegations in ¶ 46 of the Complaint.

*47.     DJL and Asia-Global collectively have significant ties to the Chemetco Site and to the business operations that arise from that site. The trust that owns the Chemetco Site entered into a consent decree with a company known as Paradigm*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1  *Minerals and Environmental Services, LLC ("Paradigm"), in 2009 to help dispose*
2  *of all waste on the site (the "Consent Decree").*

3       **ANSWER:** Defendant denies the allegations in ¶ 47 of the Complaint.

4

5       *48.    Paradigm appears to be deeply linked with DJL and Asia-Global. For*
6  *example, Paradigm's website contains an "About Us" page that describes the*
7  *company's history, the previous approach used for processing metals, and its own*
8  *unique development for extracting metals in three extensive paragraphs. These*
9  *three paragraphs are included virtually verbatim on DJL's "About Us" page of its*
10 *website. The relevant webpages are attached as Exhibit Z. As shown in Exhibit Z,*
11 *the webpages also share identical photographs. Another website (in which DJL*
12 *apparently stores its business presentations) contains a PowerPoint dated June*
13 *2015 which explains Paradigm's process of entering into the Consent Decree in*
14 *2009, the specific tests and studies it performed at the site, and its progress at the*
15 *site, including a variety of demonstrative photographs taken on the site. A copy of*
16 *this PowerPoint is attached as Exhibit AA. Again, DJL's "Our Work" page on its*
17 *website claims the same accomplishments (despite the fact that DJL was not*
18 *created until at least 2012) and uses many of the same photographs. A copy of this*
19 *webpage is attached hereto as Exhibit BB. Additionally, DJL and Paradigm share*
20 *officers and employees, according to their websites. These officers and employees*
21 *include Elliott Stegin and Steve Zuber. The wording in Mr. Yang's biography on*
22 *DJL's page overlaps with Mr. Stegin's biography on Paradigm's page, and*
23 *indicates that Mr. Yang is involved in Paradigm as well. The relevant webpages are*
24 *attached as Exhibit CC. Finally, the Chemetco Site address is listed as one of DJL's*
25 *locations in the "Contact" page of its website. This webpage is attached hereto as*
26 *Exhibit DD.*

27      **ANSWER:** Defendant denies the allegations in ¶ 48 of the Complaint,
28      including Plaintiff's characterizations of the various exhibits referenced

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

therein.  The referenced web pages, or at least some of them, are not current and all of them speak for themselves.  Additionally, anything found on Paradigm's website is irrelevant to this lawsuit.

49.    *DJL and Asia Global's connections with the Chemetco Site and with Mr. Hou are further demonstrated by DJL's connections with another company, Jet Enterprises & Holding Co., LLC ("Jet Enterprises"). DJL's "Our Work" page contains a section with photographs purportedly illustrating its work in Sauget, Illinois. The webpage is attached hereto as Exhibit EE. Under this section, DJL cites an article from the Belleville News-Democrat, dated October 5, 2015. The article refers to the impact caused by Jet Enterprises purchasing a plant named Big River Zinc in Sauget, Illinois in October 2015. The article reveals that Paradigm officer Mr. Zuber was the broker for this particular transaction, and Mr. Zuber explained that "the space will be renovated within the next six months following a cleanup throughout the site." A copy of the article is attached hereto as Exhibit FF. Notably, Jet Enterprises' purchase of the Big River Zinc plant coincides with Mr. Hou's representation to Eferton agents and employees that he had recently purchased a smelter named Big River Zinc, and demonstrates Mr. Hou's connection with Asia-Global, DJL, Paradigm, and Jet Enterprises, and with their business operations.*

**ANSWER:** Defendant denies the allegations in ¶ 49 of the Complaint, including Plaintiff's characterizations of the various exhibits referenced therein.  The referenced exhibits, or at least some of them, are not current and all of them speak for themselves.  Additionally, matters relating to Big River Zinc and Jet Enterprises are irrelevant to this lawsuit.

50.    *DJL's webpage showing its alleged work in Sauget, Illinois, copies the photographs from Jet Enterprises' website as well. The photographs are attached*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

PLAINTIFF'S FIRST AMENDED COMPLAINT

*hereto as Exhibit GG. Additionally, Jet Enterprises' corporate filing with the Illinois Secretary of State, attached hereto as Exhibit HH, names Paradigm officer Mr. Stegin as the Manager/Partner whose designated address is the Chemetco Site, and designates Paradigm's business address as the same one designated in DJL LLC's most recent filing: 3 Pointe Dr. Ste 315, Brea, CA 92821 (despite the fact that only Mr. Yang, not Mr. Stegin, is a registered resident at this address).*

**ANSWER:** Defendant denies the allegations in ¶ 50 of the Complaint, including Plaintiff's characterizations of the various exhibits referenced therein. The referenced exhibits, or at least some of them, are not current and all of them speak for themselves. Additionally, matters relating to Jet Enterprises are irrelevant to this lawsuit.

## FIRST CLAIM FOR RELIEF
### Common Law Fraud
### (Against Mr. Hou)

*51.     Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-50 above.*

**ANSWER:** Defendant states that Plaintiff's First Claim (Paragraphs 51-55) is not directed against it, and, therefore, Defendant makes no response thereto.

*52.     Mr. Hou defrauded Eferton by knowingly and falsely misrepresenting that the goods in question were copper ingots of at least 97% purity. Mr. Hou, World Gold, and Shing Fu knowingly misrepresented the quality of the copper ingots.*

**ANSWER:** Defendant states that Plaintiff's First Claim (Paragraphs 51-55) is not directed against it, and, therefore, Defendant makes no response thereto.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1

2          *53.     Mr. Hou acted with the intent that Eferton would rely on his knowing*

3 *misrepresentations. Mr. Hou, World Gold, and Shing Fu incorporated these*

4 *misrepresentations into the contracts which formed the basis for the business*

5 *transactions in question, and Mr. Hou personally repeated these*

6 *misrepresentations during the course of those transactions. Mr. Hou, World Gold,*

7 *and Shing Fu also provided shipping documents containing further*

8 *misrepresentations made by Asia-Global and DJL. These documents were expressly*

9 *required in order for the transactions to take place, and expressly triggered an*

10 *obligation for Eferton to pay nearly $45 million to companies controlled by Mr.*

11 *Hou, which Eferton did in fact pay.*

12        **ANSWER:** Defendant states that Plaintiff's First Claim (Paragraphs 51-55)

13        is not directed against it, and, therefore, Defendant makes no response

14        thereto.

15

16          *54.     Eferton was unaware of the falsity of Mr. Hou's statements. Eferton's*

17 *contractual agreements with companies controlled by Mr. Hou required that the*

18 *goods purchased and sold would be copper ingots containing 97% copper. Mr.*

19 *Hou, World Gold, and Shing Fu represented that the goods were copper ingots that*

20 *contained 97% copper. Eferton reasonably relied on these representations, based*

21 *on prior dealing and standard industry practice, and had the right to do so.*

22        **ANSWER:** Defendant states that Plaintiff's First Claim (Paragraphs 51-55)

23        is not directed against it, and, therefore, Defendant makes no response

24        thereto.

25

26          *55.     Eferton suffered consequent and proximate injury as a result of Mr.*

27 *Hou's fraudulent conduct. Eferton entered into transactions to purchase and then*

28 *resell nearly $45 million worth of copper of 97% purity. Eferton's investment*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

*should have been protected by the fact that, if Shing Fu reneged on its contractual agreements to purchase the copper, Eferton would then have title to the copper and could simply resell it. However, Eferton suffered consequent and proximate damages in the amount of the value it was to receive from the contract. Eferton also suffered costs and expenses due to: (1) certain shipping companies' requirement that Eferton provide undertakings as well as these companies' assertions of liens over the Shipments; (2) the inability of the ships to enter China; and (3) the low value and potentially toxic nature of the Shipments.*

**ANSWER:** Defendant states that Plaintiff's First Claim (Paragraphs 51-55) is not directed against it, and, therefore, Defendant makes no response thereto.

## SECOND CLAIM FOR RELIEF

### Common Law Fraud

### (Against Asia-Global, DJL LLC, and DJL Corp.)

*56.    Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-55 above.*

**ANSWER:** Defendant incorporates ¶¶ 1-55 of this Answer as if fully set forth herein as its response to ¶ 56 of the Complaint.

*57.    Asia-Global, DJL LLC, and DJL Corp. defrauded Eferton by knowingly and falsely misrepresenting that the materials shipped in the transactions described herein were copper ingots of at least 97% purity. Asia-Global and DJL knowingly misrepresented the type of goods and their quality in the certificates of quality and packing lists they issued with respect to the shipments, and Asia-Global made additional misrepresentations by affixing its seal to these documents. Asia-Global and DJL also knowingly misrepresented the type*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

1 | *of goods and their quality in providing information for the bills of lading, and Asia-*
2 | *Global made additional misrepresentations by affixing its seal to these documents.*
3 | **ANSWER:** Defendant denies the allegations in ¶ 57 of the Complaint.
4 |
5 | 58.    *Asia-Global, DJL LLC, and DJL Corp. acted with the intent that*
6 | *Eferton would rely on their knowing misrepresentations and to induce Eferton to*
7 | *contract with World Gold and Shing Fu so as to further their fraudulent scheme.*
8 | *Asia-Global's and DJL's misrepresentations appeared on documentation which was*
9 | *expressly required in order for the transactions to take place. In fact, these*
10 | *misrepresentations appeared in the form of certificates, packing lists, and bills of*
11 | *lading which expressly triggered an obligation for Eferton to pay nearly $45*
12 | *million to companies controlled by Mr. Hou, which Eferton did in fact pay.*
13 | **ANSWER:** Defendant denies the allegations in ¶ 58 of the Complaint.
14 |
15 | 59.    *Eferton was unaware of the falsity of the statements. Eferton's*
16 | *contractual agreements with companies controlled by Mr. Hou required that the*
17 | *goods would be copper ingots and that the purity of the copper ingots would be*
18 | *certified. Asia-Global and DJL provided false representations as to the type of*
19 | *goods and their purity. Eferton reasonably relied on these representations, based*
20 | *on prior dealing and standard industry practice, and had the right to do so.*
21 | **ANSWER:** Defendant denies the allegations in ¶ 59 of the Complaint.
22 |
23 | 60.    *Eferton suffered consequent and proximate injury as a result of Mr.*
24 | *Hou's fraudulent conduct. Eferton entered into transactions to purchase and then*
25 | *resell nearly $45 million worth of copper of 97% purity. Eferton's investment*
26 | *should have been protected by the fact that, if Shing Fu reneged on its contractual*
27 | *agreements to purchase the copper, Eferton would then have title to the copper and*
28 | *could simply resell it. However, Eferton suffered consequent and proximate*

*damages in the amount of the value it was to receive from the contract. Eferton also suffered costs and expenses due to: (1) certain shipping companies' requirement that Eferton provide undertakings as well as these companies' assertions of liens over the Shipments; (2) the inability of the ships to enter China; and (3) the low value and potentially toxic nature of the Shipments.*

**ANSWER:** Defendant agrees that Plaintiff's damages, if any, were caused by "Mr. Hou's fraudulent conduct" and/or by Plaintiff's own conduct. As to the remaining allegations in ¶ 38, Defendant lacks knowledge or information sufficient to form a belief, and therefore denies the same.

## THIRD CLAIM FOR RELIEF

### Civil Conspiracy

### (Against Asia-Global, DJL LLC, and DJL Corp.)

*61.     Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-60 above.*

**ANSWER:** Defendant incorporates ¶¶ 1-60 of this Answer as if fully set forth herein as its response to ¶ 61 of the Complaint.

*62.     Asia-Global, DJL LLC, and DJL Corp. each owed a duty to Eferton as sellers, suppliers, manufacturers, and/or certifiers of the goods at issue.*

**ANSWER:** Defendant states that ¶ 62 of the Complaint states a legal conclusion, for which no answer is required.

*63.     On information and belief, Asia-Global, DJL LLC, and DJL Corp. were aware that Mr. Hou planned to defraud Eferton in the manner described in Paragraphs 51-53.*

**ANSWER:** Defendant denies the allegations in ¶ 63 of the Complaint.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

27

64.     On information and belief, Asia-Global, DJL LLC, and DJL Corp. agreed with each other to so defraud Eferton.

**ANSWER:** Defendant denies the allegations in ¶ 64 of the Complaint.

65.     Asia-Global, DJL LLC, and DJL Corp. participated in this conspiracy by the wrongful act of knowingly misrepresenting the nature and quality of the copper ingots in the certificates of quality and packing lists they issued with respect to the shipments, and Asia-Global additionally participated in the conspiracy by the wrongful act of affixing its seal to certificates and packing lists containing misrepresentations. Both Asia-Global and DJL also participated in the conspiracy by providing false information to be included in the bills of lading, and Asia-Global made additional misrepresentations by affixing its seal to these documents.

**ANSWER:** Defendant denies the allegations in ¶ 65 of the Complaint.

66.     As a result of this conspiracy, Eferton suffered consequent and proximate damages in the amount of the value it was to receive from the contract. Eferton also suffered costs and expenses due to: (1) certain shipping companies' requirement that Eferton provide undertakings as well as these companies' assertions of liens over the Shipments; (2) the inability of the ships to enter China; and (3) the low value and potentially toxic nature of the Shipments.

**ANSWER:** Defendant denies the allegations in ¶ 66 of the Complaint.

# FOURTH CLAIM FOR RELIEF

## Negligent Misrepresentation

## (Against Asia-Global, DJL LLC, and DJLCorp.)

67.     Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-66 above.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

1   **ANSWER:** Defendant incorporates ¶¶ 1-66 of this Answer as if fully set

2   forth herein as its response to ¶ 67 of the Amended Complaint.

3

4   *68.     Asia-Global, DJL LLC, and DJL Corp. made the misrepresentations to*

5   *Eferton detailed in Paragraphs 52 and 57, and made those misrepresentations with*

6   *the intent to induce Eferton to participate in their fraudulent scheme described in*

7   *Paragraphs 57-59.*

8   **ANSWER:** Defendant denies the allegations in ¶ 68 of the Complaint.

9

10   *69.     Eferton would not have contracted with World Gold and Shing Fu but*

11   *for the misrepresentations made by Asia-Global, DJL LLC, and DJL Corp.*

12   **ANSWER:** Defendant denies the allegations in ¶ 69 of the Complaint.

13

14   *70.     Asia-Global, DJL LLC, and DJL Corp. made these misrepresentations*

15   *without any reasonable ground for believing they were true. Even if Asia-Global*

16   *and DJL were somehow unaware at the time the misrepresentations were made in*

17   *their name on the certificates, packing lists, and bills of lading, they were on notice*

18   *of these misrepresentations because they would have received copies of each of*

19   *these documents pursuant to standard industry practice.*

20   **ANSWER:** Defendant denies the allegations in ¶ 70 of the Complaint.

21

22   *71.     Asia-Global, DJL LLC, and DJL Corp. had a duty to make accurate*

23   *representations in shipping-related documents and documents to which they lent*

24   *their names and seal. Additionally, as the supplier of the materials, once they*

25   *received copies of the documents, they had the duty to verify that the*

26   *representations in these documents matched the specifications of materials they had*

27   *sold, and, if not, had the duty to notify all parties involved (including the freight*

28   *forwarder and shipping lines).*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

**ANSWER:** Defendant states that ¶ 71 of the Complaint states a legal conclusion, for which no answer is required.

72.    *Eferton did not know that the representations were untrue and reasonably relied on them.*

**ANSWER:** Defendant denies the allegations in ¶ 72 of the Complaint.

73.    *As a result of Asia-Global's, DJL LLC's, and DJL Corp.'s negligent misrepresentations, Eferton suffered consequent and proximate damages in the amount of the value it was to receive from the contract. Eferton also suffered costs and expenses due to: (1) certain shipping companies' requirement that Eferton provide undertakings as well as these companies' assertions of liens over the Shipments; (2) the inability of the ships to enter China; and (3) the low value and potentially toxic nature of the Shipments.*

**ANSWER:** Defendant denies the allegations in ¶ 73 of the Complaint.

## FIFTH CLAIM FOR RELIEF

### Breach of Express Warranty

### (Against Asia-Global, DJL LLC, and DJL Corp.)

74.    *Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-73 above.*

**ANSWER:** Defendant incorporates ¶¶ 1-73 of this Answer as if fully set forth herein as its response to ¶ 74 of the Complaint.

75.    *Asia-Global, DJL LLC, and DJL Corp. stated and promised that the materials in question were copper ingots of at least 97% purity, through their descriptions of the goods contained in the shipping documents. Asia-Global, DJL*

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

1  *LLC, and DJL Corp. were responsible for the contents of these statements and*

2  *intended that Eferton, the purchaser of the goods, would rely on them.*

3      **ANSWER:**  Defendant denies the allegations in ¶ 75 of the Complaint.

4

5      *76.     These statements, promises, and descriptions of the goods were the*

6  *basis for Eferton's contracts with World Gold and Shing Fu, as the amounts Eferton*

7  *paid under those contracts were entirely dependent on the statements, promises, and*

8  *descriptions made by Asia-Global, DJL LLC, and DJL Corp. that the goods were*

9  *high quality copper; otherwise, Eferton would never have entered into the contracts*

10  *as the amount Eferton paid for the goods under these contracts was substantially*

11  *disproportionate to the actual value of the goods.*

12      **ANSWER:**  Defendant denies the allegations in ¶ 76 of the Complaint.

13

14      *77.     The goods were not 97% copper as Asia-Global, DJL LLC, and DJL*

15  *Corp. stated, promised, and described.*

16      **ANSWER:**  Defendant denies that such misrepresentations were made.  As

17      to the remaining allegations in ¶ 77, Defendant lacks knowledge or

18      information sufficient to form a belief, and therefore denies the same.

19

20      *78.     As a result, Eferton suffered consequent and proximate damages in the*

21  *amount of the value it was to receive from the contract. Eferton also suffered costs*

22  *and expenses due to: (1) certain shipping companies' requirement that Eferton*

23  *provide undertakings as well as these companies' assertions of liens over the*

24  *Shipments; (2) the inability of the ships to enter China; and (3) the low value and*

25  *potentially toxic nature of the Shipments.*

26      **ANSWER:**  Defendant denies the allegations in ¶ 78 of the Complaint.

27

28

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

## SIXTH CLAIM FOR RELIEF

### Violation of Bus. & Prof. Code § 17200 et seq.

### (Against Asia-Global, DJL LLC, and DJL Corp.)

79.     *Eferton realleges and incorporates by reference the allegations set forth in Paragraphs 1-78 above.*

**ANSWER:** Defendant incorporates ¶¶ 1-78 of this Answer as if fully set forth herein as its response to ¶ 79 of the Complaint.

80.     *The deceptive and fraudulent acts and business practices of Asia-Global, DJL LLC, and DJL Corp. in conspiring to defraud Eferton were likely to deceive, and did ultimately deceive and defraud Eferton.*

**ANSWER:** Defendant denies the allegations in ¶ 80 of the Complaint.

81.     *The acts and business practices complained of are unlawful for reasons including those set forth in Eferton's second through fifth claims for relief.*

**ANSWER:** Defendant denies the allegations in ¶ 81 of the Complaint.

82.     *These unlawful and fraudulent acts caused a loss or deprivation of money to Eferton, as further detailed in Paragraph 78. This economic loss was caused by the unlawful conduct of Asia-Global, DJL LLC, and DJL Corp., as Eferton would not have entered into the contracts with World Gold and Shing Fu but for this unlawful conduct.*

**ANSWER:** Defendant denies the allegations in ¶ 82 of the Complaint.

## GENERAL RESPONSE

To the extent any allegation has not been specifically responded to in the foregoing responses, Defendant denies such allegations.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

## PRAYER FOR RELIEF

Wherefore, Defendant respectfully requests that this Court deny relief to Plaintiff, enter judgment against Plaintiff and in favor of Defendant, award Defendant its costs, attorneys' fees, and such further relief as this Court may deem just and proper.

## AFFIRMATIVE DEFENSES

Further answering Plaintiffs' Complaint and without waiving any of the specific denials set forth in its Answer, Defendant Asia-Global Renewable Energy Corp.states the following as affirmative and/or additional defenses thereto:

### FIRST AFFIRMATIVE DEFENSE

1.     The Complaint and each cause of action alleged therein fail to state facts sufficient to constitute a cause of action.

### SECOND AFFIRMATIVE DEFENSE

2.     The Complaint and each cause of action alleged therein must be dismissed due to Plaintiff's failure to join a necessary party (or parties).

### THIRD AFFIRMATIVE DEFENSE

3.     Plaintiff had a duty to mitigate damages.  Plaintiff failed to mitigate its damages.

### FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiff's alleged damages, if any, were caused or contributed to by the acts, omission, negligence, recklessness, fault, and/or wrongful conduct of Plaintiff itself, including (but not limited to) Plaintiff's failure to ever inspect the goods it was purporting to purchase and/or to contact Asia-Global or either of the DJL entities concerning the goods.

**FIFTH AFFIRMATIVE DEFENSE**

5.      Plaintiff's alleged damages, if any, were caused or contributed to by the acts, omission, negligence, recklessness, fault, and/or wrongful conduct of third parties.

Dated:  July 18, 2016                              **BRYAN CAVE LLP**


By:   */s Jonathan G. Fetterly*
        Jonathan G. Fetterly
        Attorney for Defendant
        Asia-Global Renewable Energy Corp.

BRYAN CAVE LLP
560 MISSION STREET, 2500
SAN FRANCISCO, CALIFORNIA 94105

DEFENDANT ASIA-GLOBAL RENEWABLE ENERGY CORP.'S ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT